Defendant-appellant, Village of Batavia ("Batavia"), appeals a decision of the Clermont County Court of Common Pleas granting summary judgment on behalf of plaintiff-appellee, Board of Commissioners of Clermont County ("County Commissioners"). The trial court found that the parties had not reached any agreement concerning the price Batavia would be charged by the Clermont County Waterworks ("County Waterworks") should Batavia use the County Waterworks as a permanent water supply.
In 1987, Batavia and Clermont County ("County") entered into negotiations concerning the infrastructure of the County's water supply system and Batavia's water system. The County had a water main line north of Batavia and another main just south of Batavia, which the County sought to connect by installing a 24" water main through Batavia. Batavia was suffering from severe problems in its own municipal water facilities, and the Ohio Environmental Protection Agency was threatening to close Batavia's facilities due to extensive inadequacies.
On March 21, 1989, Batavia and the County entered into an agreement ("Agreement") whereby the County would provide emergency water services to Batavia in return for Batavia allowing the County to run a water main through Batavia. Both the County Commissioners and the Batavia Village Council ("Village Council") properly ratified the Agreement by adopting it in local resolutions. By the Agreement, the County would install a 24" water main through Batavia, and Batavia would attach an 8" supply meter which would run to the Batavia facilities.
The opening recital states the purpose of the Agreement:
 [T]o authorize the construction of a water transmission main within the Village of Batavia and to authorize a connection into the water transmission main for the purpose of securing emergency back-up water supply for the Village of Batavia during periods of an emergency or disaster.
The Agreement sets forth the specifics of the contract. Paragraph Two provides that Batavia "is authorized to connect into the water transmission main * * * for the express purpose of securing an emergency back-up water supply." Paragraph Four defines "emergency" and "disaster" to exclude "inadequate water supply of the Batavia Waterworks due to inadequate facilities and/or high seasonal demand." Paragraph Six provides that Batavia must secure County approval before using the County water for emergency purposes, unless Batavia is unable to contact County officials. Should Batavia improperly use the connection, it loses all rights to use the water, and the County can remove the connection. Paragraph Nine is the provision disputed in the present appeal:
 County acknowledges that Village may desire to purchase water for resale from the County Waterworks System. Any system capacity charge imposed at that time shall be based upon the size of the master supply meter and the Village shall be treated as one entity rather than separate units for the purpose of imposing the system's capacity charge.
In June 1995, Batavia opened the 8" water meter connection to obtain a permanent water source, without any notice to or consent by the County. The County Waterworks was immediately aware of Batavia's action, but it did nothing to prevent the unauthorized use. In fact, the County Waterworks charged Batavia a yearly system capacity charge based upon the 8" master supply meter. A system capacity charge is a flat fee charged to commercial users based upon the size of the master supply meter connecting the user to the County's water main. This charge was approximately $135,000 to $140,000 in 1995 and 1996.
The situation continued until February 10, 1997 when the Village Council sent to the County Commissioners a letter requesting that the County Commissioners verify the system capacity charge that Batavia was to pay. On March 12, 1997, the County Commissioners passed Resolution No. 37-97, which established a new class of water users, "Public Water Supplier" ("PWS"), and imposed a system capacity fee of $1.10 per gallon used, based upon the average gallons used by the PWS in a day. On March 21, 1997, A. Steven Wharton, the County Administrator, sent a letter to the Village Council outlining the new PWS classification, stating that Batavia had been determined to be a PWS, and that the system capacity charge would be $247,000. Batavia refused to pay the fee.
On June 19, 1997, David A. Spinney, the Assistant County Administrator, sent to the Village Council a letter notifying the Village Council that Batavia's unauthorized use of the County's water system violated the Agreement. Batavia responded on July 3, 1997, when Jim A. James, the Village of Batavia Administrator, wrote to the County Commissioners. James asserted that the system capacity fee was controlled by Paragraph Nine of the Agreement, which purports to base the fee on the size of the "master supply meter," not the amount of water used.
The County Commissioners filed suit against Batavia on September 4, 1997. The County Commissioners sought a declaratory ruling on the effect of the Agreement and the $247,000 system capacity charge that Batavia refused to pay. Batavia responded raising numerous defenses, including allegations that the County Commissioners were estopped from asserting their claims because the County Commissioners waived the right to enforce Paragraph Six of the Agreement, and that Paragraph Nine of the Agreement controlled the fee to be charged. Both parties filed motions for summary judgment on all issues in the case.
Before ruling on the motions for summary judgment, the trial court sua sponte ordered an evidentiary hearing to clarify certain issues. Neither party objected to this hearing. The parties presented live testimony, subject to cross-examination, by two witnesses. On July 8, 1998, the trial court issued its decision. The trial court found only one issue could be considered for summary judgment: whether the parties had agreed to a specific future system capacity charge. The trial court ruled that the Agreement was for only emergency water purposes, and it did not bind the parties to a specific future fee. The trial court granted summary judgment to the County Commissioners on this one issue, leaving all other issues for future resolution.
On appeal, Batavia presents the following assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF, BOARD OF COUNTY COMMISSIONERS OF CLERMONT COUNTY, WHERE THERE WERE GENUINE ISSUES OF MATERIAL FACT FOR TRIAL.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED WHEN IT CONSIDERED ORAL TESTIMONY INTRODUCED AT A HEARING ON THE MOTION FOR SUMMARY JUDGMENT.
Before we can address the specific assignments of error, we must first determine whether there is a final appealable order in the instant case. As reflected by the pleadings, the present case raises several claims and involves multiple issues which will determine whether the Agreement is binding upon the parties and whether the County Commissioners are entitled to relief.
Judgments involving such situations are governed by Civ.R. 54(B), which provides:
 When more than one claim for relief is presented in an action * * *, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
Civ.R. 54(B) was adopted to permit appeal when judgment is rendered on fewer than all of the claims or parties presented before the court. Stewart v. Midwestern Indemn. Co. (1989),45 Ohio St.3d 124, 127. "[W]hen a court enters final judgment as to fewer than all of the claims or parties, it must expressly state that there is no just reason to delay an appeal on that judgment." Id., citing Gen. Acc. Ins. Co. v. Ins. Co. of NorthAmerica (1989), 44 Ohio St.3d 17, 20.
Nonetheless, even though a trial court may state that "there is no just reason for delay," the judgment will be deemed a final appealable order only if it also complies with R.C.2505.02. Noble v. Colwell (1989), 44 Ohio St.3d 92, 96. R.C.2505.02 provides, in pertinent part:
 (B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
 (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment.
"Substantial right" is defined as "a legal right; and that right is one which is enforced and protected by law."Id. at 94; see, also, R.C. 2505.02(A)(1). Thus, inclusion of the appropriate language under Civ.R. 54(B), that "there is no just reason for delay," will not turn a non-final order that fails to meet the requirements of R.C. 2505.02 into a final appealable order. Id. The order at issue must always fit into one of the categories of "final order" set forth in R.C.2505.02. Id.
In the present case, the trial court has yet to rule on the other claims and defenses raised by the parties. These other claims and defenses are intimately tied to the final determination of whether the County Commissioners are entitled to recovery for Batavia's unauthorized use of the County's water system. A review of the pleadings and arguments of the parties reveals that the other issues raised by the parties may also be determinative of the rights of the parties. Regardless of the trial court's ruling on the effect of Paragraph Nine of the Agreement, whether Batavia breached the contract under Paragraph Six of the Agreement and whether the County Commissioners are estopped from asserting their claims are still relevant to the final determination in the case at bar.
The trial court's ruling on this single claim by the County Commissioners does not finally or conclusively resolve this case. The trial court's decision does not determine the action or prevent a judgment, and cannot be said to affect the substantial rights of the parties. The appeal herein must be dismissed for lack of a final appealable order.
In accordance with the foregoing, it is the order of this court that the instant appeal be, and the same hereby is, dismissed.
POWELL, P.J., and KOEHLER, J., concur.